## WALLACE v. SKINNER.

INSTRUCTIONS—STATEMENT OF THE ISSUES—ABSENCE OF THE EVI-
DENCE FROM THE RECORD—PRESUMPTIONS—SUIT FOR PERSONAL IN-
JURIES—DEFENSE—RELEASE OF CLAIM—FRAUD—PRESUMPTIONS—
BURDEN OF PROOF—VERDICT—SPECIAL FINDINGS—EVIDENCE—CON-
TRACT—RELEASE—CONSIDERATION—APPEAL AND ERROR—PRESUMP-
TIONS—JURY—SEPARATION DURING TRIAL.

1. When the issues in a cause are numerous or complicated, or
   involved in intricate averment not easily understood by the
   ordinary juryman, a statement thereof by the court in
   instructing the jury may be necessary to bring the ques-
   tions of fact to be decided within the clear comprehension
   of the jury, within the meaning of Section 3644, Rev. Stat.,
   requiring the court to give such instructions as may be
   necessary.

2. Where it is the duty of the court to state the issues in
   charging the jury they need not all be stated in a single
   paragraph, but it is sufficient if they are fully stated in
   some part of the charge so as to be understood.

3. In the absence of a statute expressly requiring a specific
   statement of the issues in the instructions, the rule impos-

ing such duty is not merely technical, but its obvious purpose is that the issues shall be fairly understood by the jury to the end that they may intelligently decide the questions of fact submitted to them.

4. In considering an objection on error that the issues were not stated in the charge of the court, it is proper to presume, nothing to the contrary appearing, that each party, before the introduction of evidence as permitted by statute, stated his case or defense and the evidence by which he expected to sustain it.

5. Where the issues were simple, the evidence not in the record, and the several instructions taken together sufficiently explained the issues to be decided so as to leave no room for doubt that the jury must have fully understood them, and the parties had presumably, as permitted by statute before the introduction of evidence, respectively stated the case and defense; *Held,* on error, that an objection that the court failed to state the issues to the jury was not well taken as a ground for reversal.

6. Where the evidence is not in the record it must be presumed, on error, that the instructions given, so far as applicable to the case upon the pleadings, were based upon evidence, and, if correct upon any evidence that might have been properly admitted under the issues, that such evidence was in the case.

7. The answer of defendant in a suit for personal injuries caused to plaintiff by an alleged wild and vicious animal owned and kept by defendant alleged as a separate defense the payment by defendant to plaintiff of a specified sum prior to the commencement of the suit, in full satisfaction and discharge of plaintiff's claim and the execution thereupon of a written release of such claim, which release was set out in full. *Held,* that the facts so pleaded constituted a complete defense to the action.

8. In connection with a general verdict for defendant, in an action for personal injuries caused by an alleged vicious animal, the jury returned answers to special interrogatories submitted at defendant's request, thereby finding that a written release of plaintiff's claim in consideration of the payment by defendant of a specified sum, pleaded in defense, but denied in the reply, had been executed by plaintiff to be delivered to defendant in consideration of said sum so paid, and that the party through whom the transaction was consummated had acted for plaintiff and not defendant, and had not as alleged misrepresented the con-

tents or legal effect of the release, nor fraudulently in-
duced its execution. *Held,* that the general verdict, as ex-
plained by the special findings, was to be taken as a finding
for defendant upon the defense of settlement set up in the
answer.

9. Instructions relating to the primary liability of a defendant
for personal injuries caused by an alleged wild and vicious
animal, though incorrect, would not amount to prejudicial
error, and a consideration of such instructions is, therefore,
unnecessary, where the jury found in favor of the defend-
ant upon his separately pleaded defense of a settlement of
plaintiff's claim before suit.

10. It is to be presumed in the absence of contrary evidence that
a party at the time understood and agreed to the terms of
an instrument signed by him.

11. The burden is upon a party who signed a release of a claim
for personal injuries to show by evidence clear, cogent and
convincing, that he did not in fact understand it, or agree
to its terms, but was induced to sign the same through
fraudulent representations as to its contents, in order to
overcome the effect of the instrument on such ground; and
hence an instruction to that effect is held proper.

12. A party signing a release of a claim for personal injuries is
estopped by his own negligence from asserting its inval-
idity on the ground of misrepresentation as to its nature
and contents, where before signing he had the capacity and
full opportunity to read it, but instead of doing so chose
to rely upon what a third person said to him about it; and
an instruction applying that principle is upheld.

13. Whether special findings shall be directed in connection with
a general verdict is discretionary with the court, but it is
a discretion to be soundly and reasonably exercised.

14. How general or particular the question of fact should be that
is submitted to a jury for special finding in connection with
a general verdict rests largely in the sound judicial dis-
cretion of the trial court.

15. Questions of fact submitted for special findings in connec-
tion with a general verdict should be material to the con-
troverted issues, and proper to a just determination of the
case.

16. Only when there appears to have been a clear abuse of
judicial discretion prejudicial to the complaining party will
the action of the court in submitting questions of fact for
special findings in connection with a general verdict justify
a reversal of the judgment.

17. Special findings in case a general verdict is rendered are only authorized upon questions of fact, and though they need not be confined to the ultimate fact or facts to be determined, they should relate to controlling facts, or such as are proper for consideration in determining such ultimate fact or facts.

18. A question submitted for special finding in case a general verdict is rendered is improper which requires the jury to recite the evidence, or to answer as to what the testimony may have been in relation to a particular fact.

19. Error because calling for the evidence in submitting a question for special finding in connection with a general verdict held not to be prejudicial where it was not answered, but an answer was rendered unnecessary by a finding upon another question properly submitted, and the general verdict was sustainable upon other issues.

20. An objection on the ground of uncertainty does not lie to a question for special finding in connection with a general verdict which, in referring to a certain instrument, described it as the instrument called the "release" set out in the "amended answer," instead of the "second amended answer" upon which the cause was tried, the same instrument only having been set out in each.

21. Since it is always competent to show the true consideration of a written instrument, proof that the consideration of a release of a claim for personal injuries, which recited its consideration to be one dollar and other good and valuable considerations, was in fact the sum of $250, does not make of it a different instrument nor amount to a contradiction of the instrument itself.

22. Upon an issue as to whether or not fraud had been practiced in inducing a party to sign a release of a claim for personal injuries, the question is primarily one of fact for the jury, and hence a question requiring a special finding as to whether the party was fraudulently induced to sign the release is not objectionable on the ground that it calls for a conclusion of law.

23. Where the evidence is not in the record, and the instructions in relation to an issue as to whether the signing of a release of the claim sued on had been induced by fraud stated what would constitute fraud, it must be presumed that the instructions in that regard covered every element of fraud rendered proper by the evidence to be referred to.

24. Where the evidence is not in the record, every presumption as to materiality should, on error, be indulged in favor of a direction for special findings.

25. Error, if any, in failing to instruct the jury to make special findings as directed only in case they returned a general verdict is harmless, where a general verdict was returned.

26. It is not proper to instruct special findings only in case a verdict should be found for a particular party.

27. Alleged irregularities in proceedings during the trial, not appearing in the record otherwise than by recitals in the motion for new trial, are not properly before the court for consideration on error.

28. The record not disclosing that the jury were allowed to separate during the trial, it will be presumed, in the absence of a proper record showing to the contrary, that the court duly ordered the jury after being sworn into the custody of an officer, as required by statute. (R. S. 1899, Sec. 3643.)

[Decided January 11, 1907.]                (88 Pac., 221.)

Error to the District Court, Sheridan County, Hon. Carroll H. Parmelee, Judge.

Suit by Alice Wallace for personal injuries caused by an alleged wild and dangerous elk owned and kept in captivity by the defendant, Charles W. Skinner. The vicious nature of the animal was denied, and by way of separate defense a settlement of the claim sued on was pleaded. Judgment for defendant. The plaintiff prosecuted error, but the evidence was not brought into the record. The facts are stated in the opinion.

*M. B. Camplin,* for plaintiff in error.

The court should have instructed the jury what the issues were. Its failure to do so constitutes reversible error. (11 Ency. Pl. & Pr., 153-155; Blashfield on Instructions, 95; R. Co. v. Eagan, 67 Pac., 887; Stevens v. Maxwell, 70 Pac., 873; Meyer v. Moon, 26 Pac., 40; R. Co. v. Dalton, 72 Pac., 209; Kamm v. Sloan, 83 Pac., 1103; Maxwell Pl. & Pr. (5th Ed.), 430, 431; Dexter v. McCready, 54 Conn., 174; Mimms v. State, 16 O. St., 221.) The court is re-

quired to give such instructions upon the law as may be necessary, even without specific requests. (R. S. 1899, Sec. 3644; Ry. Co. v. Jarvi, 3 Wyo., 375; Blash. Instr., 131; 11 Ency. Pl. & Pr., 158; Maxwell Pl. & Pr. (5th Ed.), 430, 431.) Erroneously, none of the instructions placed any duty as to proof upon defendant, though he pleaded an affirmative defense. The jury should have been instructed to disregard the second defense if they found for defendant on the first defense, for though a defendant may plead inconsistent defenses he cannot have an inconsistent recovery. (Galloway v. Hicks, 26 Neb., 531.) Plaintiff's reply put the burden upon defendant as to the affirmative defense, and also as to the affirmative allegations of the first defense. Although instructions were given in the case, they are wholly inadequate to state the issues raised by the pleadings, and do not instruct upon the law, as to the issues so raised. There should have been some requirement of the defendant as to his affirmative allegations to defeat plaintiff's cause of action, and denied by the plaintiff in her reply. (Brinkley v. Dewall, 58 Pac., 1028; Whipple v. Preece, 56 Pac., 296, 298-9; 2 Ency. Ev., 794; 3 Elliott's Ev., 2076.)

The defendant does not rely upon the terms or consideration of the release set forth; but, on the contrary, upon another contract; upon different terms; a different consideration, made at a different time; the proof disputing the terms, and the expressed consideration of the paper set forth. Such allegations of accord and satisfaction he is required to establish by a preponderance of the evidence. (Simmons v. Oullahan, 17 Pac., 543; Board v. Durnell, 66 Pac., 1073; 1 Kinkead Code Pl., 130.)

Whether plaintiff had returned or offered to return the $250 paid to her was immaterial, and a special finding thereon was erroneously requested. (Meyer v. Haas, 58 Pac., 1042; Sanford v. Ins. Co., 40 Pac., 609; Bjorklund v. Elec. Co., 77 Pac., 727; 11 Ency. Pl. & Pr., 158-162.) The general verdict is in conflict with the special findings as to the release, because they refer to a different instrument from the one pleaded. Judgment should have gone

for plaintiff under the special findings.    (55 Neb., 656.)
The submission of the special questions (without the qual-
ifying words of the statute that said questions were only to
be answered, in case the jury render a general verdict in
favor of the defendant) was error.   The jury were com-
pelled to answer the questions whether they found in favor
of the defendant or not.   (Sec. 3656, R. S. 1899; 15 C. C.
(Ohio), 355; 66 O. S., 400.)   Question No. 1 is indefinite
and uncertain, in as much as the case was not tried on the
defendant's "amended answer," as that document was found
by the court to be insufficient; but it was tried upon the
"seconded amended answer"; reference therefore to any
"instrument set forth in the amended answer" is indefinite
and uncertain.   (Woodworth v. Thompson, 44 Neb., 311.)
Question No. 2 should not have been submitted, for the
further reason that it assumes as proven that the said $250
was a payment, instead of a donation, as alleged in plain-
tiff's reply; and for the further reason that it states the
instrument to be a release.   The court erred in submitting
questions number 3 and 4, as incompetent and not binding
on the plaintiff; and for the further reason the court ex-
cluded testimony offered by plaintiff of one of the alleged
committee that the plaintiff refused to accept the sum of
$250 in full settlement of her claim against the defendant.
Questions number 7 and 8 were incompetent and should
not have been submitted, without instructions from the
court defining agency and what in law constitutes employ-
ment.   The court erred in submitting question No. 9, as it
calls for an opinion upon the law.   Questions number 10
and 12 and question No. 14 should not have been submitted,
as they call for evidence, in violation of the statute.   (Sec.
3655, R. S. 1899.)   In short, it was error to submit these
questions to the jury, without a statement of what the issues
were, and without the necessary instructions upon the law to
guide and assist the jury in their deliberation.

It was error to permit the jury to separate during the
trial.   (R. S. 1899, Sec. 3643; Cantwell v. State, 18 O. St.,
477; Stix v. Pump, 37 Ga., 332; Richards v. Page, 81 Me.,

563; Shepard v. Baylor, 5 N. J. L., 954; Nickelson v. Smith, 15 Or., 200; 12 Ency. Pl. & Pr., 537.) It was also error to permit a story to be read to the jury by defendant's attorney which was intended to reflect upon plaintiff's character, and deprive plaintiff of a fair trial. (Ins. Co. v. Cheever, 36 O. St., 201; Stratton v. Nye, 45 Neb., 619; Crapsey v. Averill, 8 Neb., 151.) The release set up by defendant was at best only a receipt. (Allen v. Mill Co., 51 Pac., 372.) The second defense of the defendant's second amended answer does not contain facts sufficient to constitute a defense. It shows there was no claim made for which settlement is pleaded. It alleges consideration for said pretended release, other than money; namely, "other good and valuable considerations," and does not state that the plaintiff has received the same, nor allege that the defendant has performed the same, or what said "other good and valuable considerations" consist of, and does not allege that there is nothing due from the defendant to the plaintiff. The court erred in allowing the jury to consider the first defense, and in submitting to the jury any instructions relating thereto, and submitting to the jury any questions for special findings relating thereto, and the court erred in basing its judgment, or finding any conclusions upon the said findings, for the reason that the second defense admits all the facts set forth in the petition to be true. (1 Ency. Pl. & Pr., 82; 16 id., 168, 170.) Denial of liability and plea of payment inconsistent. (Id., 185; Hartwell v. Paige, 14 Wis., 49; Dale v. Burleigh, 1 Dak., 227; 46 N. W., 692; Beard v. Silgham, 49 N. Y. St., 508; 20 N. Y. Supp., 736; Fleishman v. Sterns, 90 N. Y., 110; Wood v. Whiting, 21 Barb., 190.) The special findings, verdict, decision and judgment are not supported by the pleadings; but are contrary to the pleadings. (Nichols v. Board, 13 Wyo., 1.)

*Lonabaugh & Wenzell,* for defendant in error.

Having made no request for an instruction defining the issues, the plaintiff cannot now complain. But the court did fully cover the issues in the instructions. The issues

were simple, and the jury clearly understood them as shown by the special findings.  Mere non-direction is not ground for new trial where there is merely an exception to a charge generally.  (1 Thomp. Tr., 2341; 2 id., 2341, 2349; Hay v. Peterson, 6 Wyo., 419.)

Where the evidence is not in the record, the judgment will not be reversed on account of instructions given if, on any supposable state of facts relevant to the issues, the instructions might have been correct.  (Downing v. State, 10 Wyo., 373; id., 11 Wyo., 86; Lovell v. Davis, 101 U. S., 541; Frost v. Creamery Co., 102 Cal., 525; De Hart v. Comrs., 143 Ind., 363; Wallace v. Robb, 37 Ia., 192; Cook v. Hopper, 23 Mich., 511; Day v. Raguet, 14 Minn., 273; Douglas v. Stephens, 18 Mo., 362; Parchen v. Peck, 2 Mont., 567; Rowell v. Chase, 61 N. H., 135; Berry v. Smith, 2 Okl., 345; Pryor v. City, 79 Pac., 240; State v. Mason, 61 Pac., 861; Parker v. Monteith, 7 Or., 277; McGavock v. Ward, 3 Tenn., 403; Bass v. Alford, 22 Tex., 399; Kinsley v. Monongalia County Court, 31 W. Va., 464.)  It must be presumed that the instrument referred to in the instructions was admitted by the plaintiff to have been signed by her and that she was in her sound mind; and the burden then devolved upon her to show by evidence clear, cogent and convincing that she was induced to sign the same by fraudulent representatations.  (Ry. Co. v. Wilcox, 116 Fed., 913.)  The criticism of plaintiff that the consideration was in fact $250 while it is expressed as one dollar and other good and valuable consideration, is without merit, as it is a release in the absence of evidence to the contrary whether the consideration was in fact $1.00 and other good and valuable consideration or $250.  If from an examination of all the evidence, it is clear that an erroneous instruction was not considered in arriving at the verdict, no reversal will be directed.  (Leidigh v. Keever, 97 N. W., 801; Ry. Co. v. Borson (Neb.), 94 N. W., 617.)

. If it appears from the evidence that even under a correct construction the result could not have been otherwise, error is deemed harmless.  (4 Curr. Law., 155; Mehuren v.

Stone, 37 O. St., 49; Quinn v. Coal Co., 76 Pac., 552; Wilhelm v. Donegan, 76 Pac., 713.) In the absence of the evidence the legal presumption is that the result could not have been otherwise, under a correct instruction. (Perrin v. Parker (Ill.), 2 L. R. A., 336; Ry. Co. v. Garthright, 32 L. R. A., 220; Gray v. Meriam, 32 L. R. A., 769 (Ill.); Debney v. State, 45 Neb., 856.) In the absence of the evidence the refusal of instructions will not be considered. (Jones v. Buckness, 104 U. S., 554; McKenzie v. McCall, 3 Ala., 516; Territory v. Clanton, 20 Pac., 94; Nelson v. Mitchell, 10 Cal., 922; Hammond v. Herdman, 3 Colo. App., 379; Burk v. Clark, 8 Fla., 9; Brown v. Clement, 68 Ill., 192; Bain v. Goss, 123 Ind., 511; Mudge v. Agnew, 56 Ia., 297; Fugua v. Meslly, 12 Ken., 989; Reynolds v. Juliet, 14 Md., 118; Parker v. Kellogg, 158 Mass., 90; Ran v. Ry. Co., 13 Minn., 442; Davis v. Brown, 27 Miss., 265; Field v. Crecilins, 20 Mo. App., 302; Oltmans v. Findlay, 47 Neb., 289; Ry. Co. v. Thomas, 1 Penny, 435; Porter v. Woods, 22 Tenn., 56; McDaniels v. Martin, 25 S. W., 1041; Werner v. Schreck, 2 Pin., 394; Brown v. Kentfield, 50 Cal., 129; Sammis v. Wightman, 31 Fla., 10; Amos v. Sinnott, 5 Ill., 440; Patchell v. Jaqua, 6 Ind. App., 70; State v. Brewer, 70 Ia., 384; Gray v. Emporia, 43 Kan., 704; Arnold v. Paxton, 28 Ky., 609; Gunnison v. Langley, 85 Mass., 337; Ewart v. Tootle, 50 Mo. App., 322; Fischer v. Burshall, 27 Neb., 245; Morehouse v. Yager, 41 N. Y. Super., 135; Curry v. York, 3 Tex., 357; Worthington v. Mason, 101 U. S., 149; McLemore v. Nuckolls, 37 Ala., 662; Shepard v. Jones, 71 Cal., 223; Livingston v. Cooper, 22 Fla., 292; Tel. Co. v. Hill, 86 Ga., 500; Wright v. Crawfordsville, 142 Ind., 636; Johnson v. Knudston, 48 N. W., 937; R. Co. v. Owen, 8 Kan., 274; Thomaston v. Warren, 28 Me., 289; Burtles v. State, 4 Md., 273; Salamon v. Hathaway, 126 Mass., 482; Bedell v. Ins. Co., 16 N. Y. Supp., 147; Sondhemer v. Hoover, 144 Pa. St., 221; Parish v. Eager, 15 Wis., 532.) Refusal of instructions will not be reviewed unless the record contains enough of the evidence to show their materiality. (Ins.

Co. v. Raddin, 120 U. S., 183; Leveret v. Carlisle, 19 Ala., 80; Evans v. Lohr, 3 Ill., 511; Wallace v. Robb, 37 Ia., 192; State Ins. Co. v. Curry, 44 Kan., 741; Pullen v. Glidden, 68 Me., 559; Horton v. Cooley, 135 Mass., 589; Herbstreit v. Beckwith, 35 Mich., 93; Muirhead v. Muirhead, 16 Miss., 211; Richards v. Flanning, 5 Or., 356; Fitzhugh v. Fitzhugh, 11 Grat., 300; Paine v. Smith, 32 Wis., 335.)

It is generally held that where the party failed to sign and number the instructions requested, no error can be claimed if same are refused. (Bank v. Bennett, 36 N. E., 551; Mason v. Seiglitz, 44 Pac., 588; Farrer v. McMayor, 69 Pac., 167.)

The instructions relative to liability for injuries by animals were correct. (Spring Co. v. Edgar, 99 U. S., 645.) But regardless of that question the jury found with the defendant as to settlement and, therefore error, if any, as to primary liability was harmless. It is claimed that the court erred in not ordering the jury into the custody of the sheriff. There being no evidence that this was not done in accordance with the statute, in the absence of the bill of exceptions the presumption is that it was. But this error, if any, was waived by not objecting to it and is waived in the absence of an affirmative showing of injury. (Thompson Tr., 2548, 2549, 2611, 2613.) It is too late to raise the question of misconduct of counsel in argument after the trial and it cannot be shown by motion for new trial. (Kindler v. Pope, 106 Mo. App., 536; Raynolds v. Pierson, 64 N. E., 44; Strapp v. Hatcher, 67 S. W., 819; Ill. Central Ry. Co. v. Josey, 54 L. R. A., 78; Gutzman v. Clancy, 58 L. R. A., 744; R. Co. v. Hull, 57 L. R. A., 772; McLean v. Scripps, 52 Mich., 214.)

POTTER, CHIEF JUSTICE.

The plaintiff in error, Alice Wallace, brought this action in the District Court of Sheridan County to recover damages for personal injuries sustained in consequence of an attack upon her, while she was walking upon the streets

of the village of Big Horn in said county, by an elk, alleged to have been wrongfully and neglectfully owned and kept in said village by the defendant, Charles W. Skinner, which said elk is alleged to have been a wild, vicious, mischievous and dangerous animal, and at the time of said attack upon plaintiff to have been running at large on the streets and commons of said village. The petition alleges that plaintiff was greatly and permanently injured to her damage in the sum of five thousand dollars, and that no part of the same has been paid, except the sum of two hundred and fifty dollars; and judgment is demanded for the sum of forty-seven hundred and fifty dollars.

The answer contains two defenses. In the first defense it is admitted that the defendant owned the said elk, and that plaintiff was injured by it at the time alleged, viz., December 10, 1903, but not in the manner nor to the extent alleged; and it is then averred that the animal was a female elk which had been captured when quite young and had become thoroughly gentle and domesticated long prior to its attack upon plaintiff, and that prior to such attack it had never manifested a vicious disposition and had not been vicious nor dangerous, and that defendant had no notice of any vicious tendencies of the animal. Every allegation of the petition not admitted to be true in that defense is thereby denied. The second defense alleges a settlement between the plaintiff and defendant of the claim of the former on account of said injuries by the payment to the plaintiff and the acceptance by her on or about February 19, 1904, of the sum of two hundred and fifty dollars, which is alleged to have been accepted by the plaintiff in full satisfaction and payment of her said claim, and in satisfaction and discharge of her cause of action set forth in the petition; and that in consideration of such payment the plaintiff executed and delivered to the defendant a release of her said claim in writing, which alleged written release is set out in the answer as follows:

"State of Wyoming, County of Sheridan, ss.

"Miss Alice Wallace, being first duly sworn, on oath says: that she has this day received from Charles W. Skinner of Big Horn, Sheridan County, Wyoming, the sum of one dollar and other good and valuable considerations, in full settlement of any claims whatsoever that she may have against said Charles W. Skinner, and more especially with reference to any damage arising from the injury to her by an elk owned by said Chas. W. Skinner, which injury was caused by the said elk to the person of the said Miss Wallace on or about the 10th day of December, 1903, in Big Horn, Sheridan County, Wyoming.

"Affiant says that all her rights to any claim for damages arising from said injury are hereby waived, and she has never made any claim for the same, but appreciates the kindness of Mr. Skinner.     (Signed)     ALICE WALLACE.

"Subscribed in my presence and sworn to before me this 27th day of February, A. D. 1904.     (Signed)

"C. L. SACKETT, Notary Public."
     (Notarial Seal.)

In substance, the plaintiff's reply to the first defense of the answer specifically denies the allegations as to the absence of a vicious and dangerous disposition in the animal, and alleges that it was vicious and dangerous prior to the attack upon plaintiff to the knowledge of the defendant, and further specifically alleges that long prior to said attack the defendant well knew that the said elk was vicious and naturally wild; that it had been captured in its wild state, was a strong and powerful brute, capable of inflicting great bodily harm and of taking human life; and that it was then owned and held in captivity by the defendant, with several other elk; and that defendant was thereby chargeable with knowledge and notice of the mischievous tendencies and dangerous disposition of the animal and of its liability to do harm at any time. Said reply also denies that the animal had become fully domesticated, or that it was domesticated

to such an extent that it would not at times become ugly, mean, mischievous and vicious.

The reply to the second defense denies generally each and every allegation thereof, and specifically denies that the plaintiff at any time compromised or settled her said claim or cause of action, or at any time accepted anything whatever in full payment thereof, or at any time released or discharged the defendant from liability therefor, or that she ever received the sum of two hundred and fifty dollars or any sum whatever in satisfaction of her claim, or that she executed and delivered to defendant any instrument in writing releasing and discharging him from her said claim. The reply denies specifically that the plaintiff ever made any affidavit as set out in the answer or otherwise, but alleges in respect to the alleged release that the defendant, through one C. L. Sackett acting for him, on or about February 27, 1904, falsely and fraudulently represented the object and purpose of an instrument which she then signed, and that the same was misread to her; that she signed the instrument believing the same to be a receipt merely for the sum of two hundred and fifty dollars, which the said defendant had given to her as a present or donation, and that she was not aware of the true contents of the writing until it had been set out in full in the answer in this action. The reply alleges that the pretended release was obtained from her when she was confined to her bed as the result of the injuries complained of, while she was under the influence of opiates, and sick and weak and suffering great pain, and wholly in an unfit condition to transact any business, all of which defendant well knew. It is alleged specifically that the instrument which the plaintiff signed was represented to her as a receipt merely for the sum of two hundred and fifty dollars, which the defendant had sent to her as a present, and as not being a release and not intended as a settlement in full for her claim against defendant for the injuries she had received; and that with such understanding, and relying upon the representations then made to her,

the plaintiff was deceived and misled and fraudulently induced to sign the instrument set out in the answer, but that she never intended to sign any such instrument or to sign or execute any release of her claim against defendant, though it is admitted that the instrument which she signed was in fact the one set out in the answer and which is again copied into the reply.

The case was tried to a jury and a general verdict was returned for the defendant. In connection with the verdict the jury returned answers to certain interrogatories which had been submitted to them by the court at the request of the defendant, as follows:

1. Did the plaintiff, on February 27, 1904, execute and deliver to Carl L. Sackett, to be delivered to the defendant in this cause, the instrument dated February 27, 1904, a copy of which is set forth in defendant's amended answer, and called by witnesses in this cause the Release? Ans. Yes.

2. Did Mr. Sackett call to see plaintiff, on February 27, 1904, and discuss with her the matter of the settlement of her claim against defendant, then go and draw the release in question, and subsequently return a second time to see her, at which latter time she signed such release and was paid $250? Ans. Yes.

3. Had the three persons called the committee, or either of them, reported to plaintiff their decision as to the payment to her of $250, in full settlement of her claim against defendant, prior to the time of Mr. Sackett seeing her on the date when the release was signed? Ans. Yes.

4. Had said committee, or either member thereof, prior to Sackett's seeing plaintiff, on February 27, 1904, seen the plaintiff and advised her of the decision of the committee to the effect that she should be paid $250, which should be accepted by her in full release of her claim against defendant? Ans. Yes.

5. Did the plaintiff receive from the defendant the sum of $250 as consideration for the execution and delivery of said release? Ans. Yes.

6. Did Mr. Sackett consult with plaintiff in regard to the form and terms of the release in question? Ans. Yes.

7. Was Mr. Sackett in the employ of defendant in the matter of the execution and delivery of the release in question? Ans. No.

8. Was Mr. Sackett acting for plaintiff in the preparation, execution and delivery of the release in question? Ans. Yes.

9. Did Mr. Sackett fraudulently induce plaintiff to sign the release in question? Ans. No.

10. If you answer "Yes" to question No. 9 last above, please set out the particular fraud of which he was guilty. Ans. ——.

11. Did Mr. Sackett make any misrepresentations to plaintiff as to the contents, character or legal effect of said written instrument, termed a release, for the purpose of inducing plaintiff to sign the same? Ans. No

12. If you answer "Yes" to question No. 11 last above, set forth in detail what false statements or misrepresentations he so made concerning the character, contents or legal effect of said instrument. Ans ——.

12. Has the plaintiff ever returned, or offered to return to defendant, the $250 paid her by defendant, or any part thereof? Ans. No.

13. Had the elk in question ever at any time, to the knowledge of defendant, shown any indications of being either vicious or dangerous prior to the date of the injury to plaintiff? Ans. No.

14. If you state "Yes" to question 13 last above, state by whose evidence it was shown that the defendant had been so advised of the dangerous character of such elk. Ans. ——.

15. Had the animal in question become fully domesticated during the time it had been kept by defendant and prior thereto? Ans. Yes.

Judgment was entered in accordance with the verdict in favor of the defendant, and against the plaintiff for costs;

a motion for a new trial was overruled, to which an exception was taken, a bill of exceptions was allowed, and the plaintiff brings the case to this court on error.. The evidence is not incorporated in the bill of exceptions, but the only matters therein contained not otherwise in the record are the instructions given to the jury, certain requests for specific instructions submitted by plaintiff and refused, with the exceptions thereto respectively, and the motion for new trial, with the ruling of the court thereon, and a statement of plaintiff's exception to such ruling. The errors assigned relate chiefly to the instructions.

It is contended that the court erred in failing to define or state the issues in the case to the jury. It seems to be quite generally held that, instead of referring the jury to the pleadings to ascertain the issues for themselves, it is the province and duty of the court to state what the issues are for the benefit and guidance of the jury, since the construction of the pleadings and the issues raised thereby are questions for the court alone to determine, and not for the jury; though it is not necessary that the issues should be stated in a single paragraph of the charge, it being held sufficient if they are fully stated in some part of the charge in such a manner as to be understood, and that the court may properly omit to state an issue in support of which there is no evidence. (11 Ency. Pl. & Pr., 154-157.)

Our statute does not in specific terms require the court to state the issues to the jury, but that duty may no doubt be implied, when necessary to a fair and intelligent consideration of the cause by the jury, from the statutory requirement that "before the argument of the case is begun, the court shall give such instructions upon the law to the jury as may be necessary." (Rev. Stat. 1899, Sec. 3644.) We suppose it to be proper in all jury trials in the District Court for the court to concisely and plainly state to the jury what the issues are in the case, and, when the issues are numerous or complicated, or involved in intricate averment not easily understood by the ordinary juryman, such

a statement may be necessary to bring the questions of fact to be decided within the clear comprehension of the jury. But in this case the issues were far from complicated. They were simple, and such as would be easily understood by the average jury. The record does not inform us whether the pleadings were received by the jury or not. There seems to be no provision of the statutes either permitting or prohibiting such a practice, though we believe it is quite common in this state. But the statute permits each party before the introduction of evidence to state his case or defense and the evidence by which he expects to sustain it; and we may presume, nothing appearing to the contrary, that such statements were made. The case or defense could hardly have been stated without putting the issues clearly before the jury. The trial occupied four days, as shown by the record, and the evidence introduced during that time could only have related to the simple issues in the case, viz.: The character of the animal causing the injuries to plaintiff, whether wild, vicious and dangerous or not; defendant's knowledge of its disposition and tendencies; the consideration for the release and the circumstances surrounding its execution. In the absence of the evidence, we may, for the purpose of this question, assume that those matters were all exploited in the evidence on both sides, in view of the instructions given, which covered all those points. An examination of all the instructions convinces us that, without a specific statement in any one of all the questions of fact in controversy, taken together they sufficiently explained the issues to be decided so as to leave no room for doubt that the jury must have fully understood what they were. Moreover, their special findings upon the particular questions submitted to them convincingly show a thorough understanding on their part of the disputed matters in issue, and such findings are in perfect harmony with the verdict. In the absence of a statute expressly requirig a specific statement of the issues in the instructions the rule invoked is not a mere technical one, but its obvious purpose is that the

issues to be determined by the verdict shall be fairly under-
stood by the jury to the end that they may intelligently
decide the questions of fact submitted to them.  We are
satisfied for the reasons above mentioned that this result
was attained in the case at bar.   (Cody v. Ry. Co. (Cal.),
82 Pac., 666;  Kansas City, &c., R. Co. v. Eagan, 64 Kan.,
421 (67 Pac., 887) ;  Lambert v. La Conner T. & T. Co.
(Wash.), 79 Pac., 608.)

It may be added that it is at least doubtful whether the
objection, now urged was saved by a proper exception.
Twenty separately numbered instructions were given by the
court, and only nine of them were excepted to by the plain-
tiff, and it does not appear that the court's attention was
called to the alleged failure to state the issues, nor was that
specific objection made in the motion for new trial.  It is,
indeed, contended that one requested instruction which was
refused stated the issues; but that instruction purported to
state them only as to the release, and the points as to that
were sufficiently covered in the instructions given.  But that
requested instruction did not stop with a statement of such
issues; it proceeded to instruct upon the law as applicable
to every phase thereof, and we think in one respect at least
incorrectly, without modification, for which reason alone it
might have been properly refused.

Error is assigned upon some of the instructions given,
and the refusal of instructions requested by plaintiff.  The
evidence is not in the record.  Hence it must be presumed
that the instructions given, so far as applicable to the case
made by the pleadings, were based upon evidence; and, if
they would be correct upon any evidence that might have
been properly admitted under the issues, such evidence
must be presumed to have been in the case, and they would,
therefore, furnish no ground for reversal.   (Chosen Friends
H. L..& S. League v. Otterson, 7 Wyo., 89;  Downing v.
State, 10 Wyo., 373.)

The instructions relative to the rule of liability for the
injuries complained of were excepted to.  The court gave

an instruction admitted to be correct, at least it was not excepted to, respecting the liability of the owner holding in captivity an animal wild and ferocious by nature for personal injuries committed by it; and, also instructed as to the rule with reference to injuries committed by domestic animals, following which the jury were instructed in substance that if they should find that the animal in question was by nature dangerous and had not been sufficiently tamed and domesticated to eradicate its dangerous propensities, they should apply the rule given them with respect to liability in the case of wild and ferocious animals held in captivity, but if they found that the animal had been thoroughly domesticated, so as to entitle it to a standing among other well known domestic animals, they should apply the rule governing liability for injuries committed by the last named class of animals, unless the animal in question had previous to the attack complained of, shown indications of being either vicious or dangerous, to the knowledge of the defendant.

The instructions upon that subject were doubtless based upon a statement in the opinion of the court in the case of Spring Company v. Edgar, 99 U. S., 645, to the effect that certain animals *ferae naturae* may doubtless be domesticated to such an extent as to be classed, in respect to liability of the owner for injuries they commit, with naturally tame or domestic animals; but that as they are liable to relapse into their wild habits and become dangerous, the rule is that if they do so, and the owner becomes notified of their vicious habit, they again become included in the same rule as if they had never been domesticated, the gist of the action in such case, being not merely the negligent keeping of the animal, but the keeping of the same with knowledge of its vicious and mischievous propensities.

By the special findings of the jury, it appears that they found the animal in question to have been thoroughly domesticated, and that it had not, to defendant's knowledge, shown any indication of being either vicious or dangerous

prior to the date of the injury to plaintiff, and presumably, therefore, the jury found in favor of the defendant upon the issue as to the nature of the animal which committed the injury. But we think it obviously unnecessary to decide whether the instructions were correct upon that issue. We need not consider whether it could be properly held as a matter of law that it would be impossible to so thoroughly tame and domesticate an elk after long captivity as to bring it within the class of domestic animals, in respect to the rule of liability for personal injuries committed by it, for that question is entirely immaterial upon the record in this case. It is clear from the special findings that the jury also found with the defendant upon the issues as to the previous settlement and release of plaintiff's claim and alleged cause of action.

It is to be remembered that the signing of the release set out in the answer is admitted by the reply, and had it not been, we would be bound to presume it to have been proven, in the absence of the evidence, in support of the verdict. The plaintiff, however, sought its avoidance on the ground of misrepresentation and fraud concerning its contents, and in inducing her to sign it; and she alleged that she was thus imposed upon by one C. L. Sackett, who was acting for the defendant. She also charged that the release was without consideration; that the two hundred and fifty dollars had been sent to her by defendant as a present; and that she understood the instrument signed by her to be merely a receipt for said sum.

The jury found speically that the plaintiff executed and delivered the release to said Sackett to be delivered to the defendant; that she received said sum of money from defendant in consideration of her execution and delivery of the release; that the said Sackett was acting in the premises for her and not for the defendant; that she was previously consulted by Sackett as to the terms of settlement, and the form and terms of the release; and that the latter did not misrepresent to her the contents or legal effect

of the instrument nor fraudulently induce her to sign it. The jury further found that a certain committee had decided and had so advised the plaintiff that she should settle and release her claim against defendant for two hundred and fifty dollars to be paid to her by him; and that she had not returned nor offered to return any part of said sum.

It cannot be doubted that the facts set forth in the second defense of the answer in relation to the release, if true, constituted a complete defense to the action; nor can it be doubted, from the answers to the particular questions submitted to the jury, that they found the facts so alleged in the answer to be true, and the allegations of the reply respecting the release to be untrue. It, therefore, appears affirmatively that the general verdict responds to the issues as to the release in defendant's favor, and, as explained by the special findings, is to be taken as a finding for defendant upon the second defense of his answer. Therefore, if the jury were not correctly instructed in regard to the defendant's primary liability for the injuries complained of, the error would not be prejudicial.

It is further contended that by refusing plaintiff's requested instructions, and omitting to cover them in the instructions given, the court failed to instruct with reference to several questions of law which it is claimed were involved in the case under the issues relating to the release. As to most of the questions suggested in that connection, we are unable without the evidence to say whether they were so involved in the case as to require instructions or not. The instructions given seem to us to cover very fully and correctly all the points embraced within the several allegations of the pleadings upon the subject of the release. Two only of the instructions upon that subject were excepted to, viz.: instructions numbers five and eighteen. The fifth instruction reads as follows:

"You are instructed that the instrument read in evidence, signed by the plaintiff, is upon its face a release of a cause of action here sued upon. It is presumed that the plaintiff

understood and agreed to its terms when she so signed it. Hence, the burden is upon her to show by evidence clear, cogent and convincing that she did not in fact so understand it, or agreed to its terms, but was induced to sign the same through fraudulent misrepresentations as to its contents."

We do not understand it to be contended that the instrument is not on its face a release of the cause of action sued on. Certainly it purports to be, and we do not think any different interpretation can reasonably be given it. As already suggested, we must presume that the evidence showed that plaintiff signed it. Upon that basis the instruction correctly stated the rule of law as to the presumption in the absence of contrary evidence, and the necessity and character of proof to overcome it. (24 Ency. Law (2d Ed.), 309; Ry. Co. v. Erlinger, 112 Ill. App., 506.) The eighteenth instruction correctly applied to the case a familiar principle, assuming as we must that it was proper under the evidence. It stated in substance and effect that if the jury should find from the evidence that plaintiff had the capacity and full opportunity to read the release before she signed it, and instead of reading it chose to rely upon what Mr. Sackett said to her about it, then she would be estopped by her own negligence from claiming that the same was not legal and binding upon her according to its terms. (24 Ency. L. (2d Ed.), 309.)

It is further contended that error was committed in directing special findings of facts. The power to instruct the jurors, if they render a general verdict, to find upon "particular questions of fact" is expressly conferred upon the court by statute. (Rev. Stat. 1899, Sec. 3656.) And it is declared that when the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and that the court may give judgment accordingly. (Id., Sec. 3657.) The usual and well settled practice was adopted in the case at bar of stating the questions upon which special findings were desired in the form of interrogatories. Whether the court shall direct special findings in connection

with a general verdict is discretionary, but it is a discretion
to be soundly and reasonably exercised. (Atchison, &c.,
R. R. Co. v. Lawler, 40 Neb., 356.) How general or par-
ticular the question of fact should be that is submitted in
any case is held to rest largely in the sound judicial discre-
tion of the trial court. (Southern Kan. R. R. Co. v. Walsh,
45 Kan., 653.) As stated by Judge Brewer in an early
Kansas case, referring to a similar statute, "full scope is
given for ascertaining any fact in the case which may affect
its determination, whether one of the main essential facts,
or any minute subdivision thereof." (Bank v. Peck, 8
Kan., 660.) The questions, however, should be material to
the controverted issues, and proper to a just determination
of the case. Much latitude within general rules governing
the practice must be accorded the trial court, and only
when there appears to have been a clear abuse of judicial
discretion prejudicial to the complaining party will the
action of the court in the premises justify a reversal of the
judgment. Although the questions need not be confined to
the ultimate fact or facts to be determined, they should nev-
ertheless relate to controlling facts, or such as are proper
for consideration in arriving at a conclusion upon such
ultimate fact or facts. Special findings, in case a general
verdict is rendered, is only authorized upon questions of
fact; it is not intended that the jury shall be required to
recite the evidence, nor to answer as to what the testimony
may have been in relation to any particular fact. The sub-
mission of proper questions of fact, and the answers of the
jury thereon, will enable the court to ascertain the ground
upon which the verdict was based, and to see whether it
was based upon a correct apprehension and application of
the law. The special findings will tend to explain the ver-
dict, and to test its correctness from a legal standpoint as
based upon the facts found to exist. (20 Ency. Pl. & Pr.,
299, 300.) A mere rehearsal of the evidence would not
materially assist the court, nor subserve any beneficial pur-
pose. On the other hand, to require a recitation of the testi-

mony. might mislead and confuse the jury, by tending to withdraw their attention from the material facts necessary to be determined in arriving at a verdict. The object of the practice permitted by the statute is not that the court may ascertain whether the jury has correctly found any fact or facts to exist, for a determination as to the facts is within the sole province of the jury; nor is it the purpose of the statute that the jury may, by the submission of interrogatories, be cross-examined respecting their conclusion upon any particular fact arising in the case. But, as above suggested, the manifest design is in general that it may be ascertained from the special findings, whether the jury by its verdict has correctly applied the law to the facts found. Hence, the court is expressly authorized to apply the law to the facts found, and render judgment accordingly, whenever the special finding of facts is found to be inconsistent with the general verdict. (Sec. 3657.)

The questions which were submitted to the jury are set out at length in an earlier part of this opinion, and need not be here repeated. The fourteenth question is clearly objectionable, for the reason that it required the jury to state by whose evidence it was shown that the defendant had knowledge of the vicious and dangerous character of his elk, if it was found in answering a previous question that he had such knowledge. What any witness may or may not have testified, or whether any witness testified upon any particular subject, is not a question of fact such as the statute contemplates. In regard to the matter suggested by the fourteenth question, it may not have been shown by the testimony of any particular witness that the defendant had been advised of the propensity of the animal in question to attack persons, but the whole evidence showing the previous conduct of the animal, and the more or less intimate acquaintance of the defendant with it, or his acts relating to it, might have been deemed sufficient to show knowledge on his part. The fact in that respect was whether or not he had knowledge. But the error in submitting the

question cannot be held prejudicial, since it was not answered, but it was found that he had no knowledge, and for the further reason that the verdict is sustainable upon the defense of settlement and release, from the facts found upon the issues raised by that defense.

For the same reason that they seem to have called for the evidence in the case, the propriety of questions ten and twelve is to be doubted. But they were not answered. On the contrary, the jury found the facts to exist which renderd an answer to them respectively unnecessary, and we observe nothing in the record to disclose that the submission of the questions prejudiced the plaintiff. In the absence of the evidence, and the presumptions that follow, the latitude of the trial court in relation to the direction for special findings is obviously considerably enlarged when the matter comes to be considered by an appellate court. We are of the opinion that generally such questions as numbers ten and twelve, which call for a statement of the particular fraud or misrepresentations, if any fraud is found to have been practiced, or any misrepresentations made, are improper. We are not, however, prepared to say that the evidence in a case may not present features rendering such or similar questions proper, as intended to elicit a finding upon controverted facts. We do not here wish to deny that it may be possible for evidence to disclose a situation with reference to the acts or conduct of a party involving a controversy upon the law of the case, as to the effect of such acts or conduct upon an issue of fraud or misrepresentation, so that a finding showing particular acts or statements may be material in explanation of a general verdict. We would not be inclined, therefore, without more than is shown by this record, to reverse the judgment because of the submission of the questions referred to.

The first question is not, in our opinion, objectionable because uncertain, as contended, in that it referred to the instrument called the "release" set out in the *amended* answer, instead of the *second amended* answer, on which the

cause was tried. The same instrument is set out in each answer, and doubtless but one alleged release was mentioned in the evidence. Neither do we think that the other questions relating to the release were based upon insufficient instructions as to fraud, agency, consideration, etc. What may have been shown by the evidence concerning such matters is not disclosed. So far as the pleadings indicate the controverted issues, the law controlling the effect of the release, its consideration, and the inducement to its execution, seems to have been as fully covered as necessary by the instructions. It appears to be contended that, inasmuch as the release stated upon its face that it was executed in consideration of one dollar and other good and valuable considerations, the allegations of the answer stating its consideration to have been $250 makes of it a different instrument. We do not quite grasp the intended force of the argument. It is always competent to show the true consia eration of a written instrument; and, assuming that the evidence had such effect, and that it disclosed the consideration to be the $250 which the plaintiff had admittedly received from the defendant, there would not result any contradiction of the instrument itself. Obviously, the release did not state its true or full consideration; and the plaintiff was informed by the answer that defendant claimed the money she had received from him to be the consideration. We do not understand how plaintiff could have been prejudiced by such a situation. It was a question for the jury under the issues, in passing upon the evidence, to determine what constituted the true consideration, if any, for the release.

It is urged that the ninth question called for a conclusion of law. We do not think the question is subject to that objection. It did require the jury to apply to the evidence the law given to them in the instructions, and thereby determine whether the plaintiff was fraudulently induced to sign the release. But that was their duty, in the absence of the direction for a special finding. Whether or not fraud

had been practiced in obtaining plaintiff's signature to the release was primarily a question of fact. The jury were told by the court that certain things would constitute fraud. We must presume that the instructions in that regard covered every element of fraud which the evidence rendered proper to be referred to in the instructions. The twelfth question is objected to on the ground that it submitted an immaterial matter. It is urged that, under the issues respecting the release tendered by plaintiff's reply, it was unnecessary for her to have 'either returned or offered to return the two hundred and fifty dollars sent to her by the defendant, and that the question as to whether she did return or offer to return the money was, therefore, immaterial. It may be conceded that, upon plaintiff's theory as shown by the pleadings, such return of the money or offer to return it was not an essential condition to the avoidance of the release; but we do not suppose, nor is there anything in the instructions to indicate, that the question was propounded with the idea that plaintiff's right to recover depended upon an affirmative answer to the question, in case her theory of the matter was accepted by the jury. However, we are unable to say that, upon the evidence, which is not here, the fact covered by the question may not have been properly deemed material in connection with other evidence showing plaintiff's conduct, as bearing upon her good faith. Where the evidence is not in the record, we think that every presumption as to materiality should be indulged in the consideration on error of a direction for special findings. That the question was in law an improper one, because immaterial, or, if improper, that it was prejudicial, is not, therefore, apparent upon the record.

The error, if any, in failing to instruct the jury to make the special findings only in case they returned a general verdict was harmless, for the reason that they did return a general verdict, thus complying with the statutory condition. It would not have been proper to instruct special findings

only in case a verdict should be found favorable to a particular party. (20 Ency. Pl. & Pr., 317.)

The remaining errors assigned are based upon alleged irregularities in the proceedings during the trial, not appearing in the record otherwise than by recitals in the motion for new trial, which fact is in itself a sufficient ground for refusing to consider them. The allowance of a bill of exceptions brings a motion for new trial therein set out into the record, but it does not make the mere recitals of the motion a part of the record. So far as the motion is concerned, its recitals are but the statements of the party filing it. By allowing a bill the court or judge certifies to the fact that the motion as set out was made and filed, and, if so stated, that it was overruled, and the ruling excepted to. Such has been the uniform holding of this court, and it is so obviously correct that further discussion of the question is unnecessary. Hence the objection, shown only by recitals in the motion for new trial, that counsel for defendant was improperly permitted to read a certain story to the jury, in making his argument, is not properly before us. The same is true as to the alleged exclusion of certain evidence said to have been offered by plaintiff.

The foregoing observations apply to some extent also to the contention that the court erred in not ordering the jury after being sworn into the custody of an officer, and in permitting the jurors to separate at the noon recess and over night during the days of the trial, without plaintiff's consent. The statute provides that, after the oath has been administered to the jury, the court shall order the jury into the custody of the sheriff, or other officer to be selected by the court, and that the jurors shall not be permitted to separate or depart the custody of the officer until duly discharged, unless by consent of the parties to the action. (Rev. Stat. 1899, Sec. 3643.) It nowhere appears, except by a statement to that effect in the motion for new trial, that the irregularity complained of occurred. And even the motion fails to recite that any objection to the alleged proceeding

or exception to it was interposed or taken at any time during the trial. Hence it might reasonably be held, nothing to the contrary appearing, that plaintiff's consent is to be presumed, or that the objection was waived. But the record entry of the trial does not disclose that the jury were allowed to separate, and, although it is not affirmatively stated in the record that the jury were ordered into the custody of the sheriff, or other officer, which order it is the duty of the court to make when the jury are not allowed to separate, it must be presumed, in the absence of anything to the contrary of which the appellate court may properly take notice, that the duty imposed by law upon the court in the premises was complied with.

We have thus considered all the objections which we regard as necessary to be discussed. Finding no prejudicial error in the record, the judgment will be affirmed.

*Affirmed.*

BEARD, J., and SCOTT, J., concur.