Summers, J.
It is said by counsel that the circuit court held that the trial court erred in refusing to instruct the jury that the release is a bar to a recovery by the plaintiff for the reason that the plaintiff could not maintain an action for damages for her injuries until the release had been set aside in a suit in equity. If a party suing to recover for personal injuries admits the execution of a release and seeks to avoid it on equitable grounds, he must obtain that relief to maintain his action, when he denies the execution of the release, or that it is his act, on the ground of want of mental capacity at the time he signed it, or that his signature to the release was procured by fraud, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which he did not intend to give, he may maintain his action without obtaining a decree. In other words, if the release is void, he may ignore it in his petition, and if it is plead as a bar in the answer, he may in his reply plead the facts that make it void; and if it is not void but only voidable, he must, to maintain his action, obtain its rescission or cancellation.
“Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread, or some other fraud or imposi *210 tion has been practiced upon the' party in procuring his signature and seal. The fraud in this aspect goes to' the question whether or not the instrument ever had any legal existence.” Hartshorn et al. v. Day, 19 Howard, 223.
“At common law it has often been held incompetent to a defendant suing at law on a specialty to plead that the instrument was obtained by false representations; it is a case, it is said, for equity alone. It is clearly otherwise of the execution of the instrument, as where the bond is misread to the obligor, or where his signature is obtained to an instrument which he did not intend to’ sign. In such cases fraud may be alleged at law.” Bigelow on Fraud, 53.
And in George v. Tate, 102 U. S., 564, Mr. Justice Swayne says of a defense at law that.defendant was induced to sign a bond by fraudulent representations, “it is well-settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give.”
And in the Union Pac. Ry. Co. v. Harris, 158 U. S., 326, an action for personal injuries and in which a release had been pleaded as a bar to the action, it was held that the court’s charge to the jury to the effect that the release was not a bar to the action if the plaintiff could not and did not read it, and signed it without understanding that it was a release of his cause of action, was not erroneous.
The decisions of our own court are in accord *211 with this rule. In DeCamp v. Hamma, Exr., 29 Ohio St., 467, it is held: “In an action against the maker, by an indorsee of a negotiable promissory note, who purchased the same for a valuable consideration, .before maturity, and without notice of any fraud or infirmity as between the original parties, the defendant is not liable where it is shown: (1) That at the time of signing and delivering the note, he was induced, by fraudulent representations as to the character of the paper, to believe that he was signing and delivering an instrument other than a promissory note;. (2) That his ignorance of the true character of the paper was not attributable, in whole or in part, to his own negligence in the premises.”
We have no equity courts, but, in obedience to constitutional mandate, justice is administered without reference to any distinction between law and equity, in the same court and by one form of proceeding, and it is provided by Section 5058, Revised Statutes, that plaintiff may unite several causes of action in the same petition, whether they are such as have heretofore been denominated legal or equitable, or both, when they are included in the same transaction, or transactions connected with the same subject of action, so that it is not necessary in such instances to obtain a decree of rescission or of cancellation before commencing an action to recover damages for personal injuries, but in the same action the plaintiff may by one cause of action seek the rescission or cancellation of a release and by another cause of action ask for damages for his injuries, and if the equitable relief is granted by the judge, as if a chancellor *212 sitting to administer equity, the release then can be no bar to the cause of action for damages.
Blair et al. v. The Chicago & Alton R. R. Co., 89 Mo., 383, was an action for personal injuries. The petition contained two counts, the first asking to have cancelled and held for naught the release executed by the plaintiff, the second was an action at law claiming damages for the injuries. The answer to the first count was a general denial, accompanied by a refusal of the tender. The answer to the second count was a general denial accompanied by a plea in bar setting up the release. The reply to this was a reiteration of the allegations of the original petition as to the non-binding force of the release. The equity branch of the case was heard and a decree entered cancelling and holding for naught the release, and ordering the plaintiffs to deposit with the clerk of the court thirty dollars the amount of the tender for the benefit of the defendant. At the next term after the decree had been entered cancelling' the release, the trial was had in the action at law for damages and resulted in a verdict and judgment in favor of the plaintiff. It was held that under the code the count in equity to set aside a release of damages for personal injuries can be joined with one at law for the recovery of the damages, and that a court of equity will grant relief notwithstanding the existence of a remedy at law, unless the defendant pleads the remedy at law in defense of the equitable suit.
Girard v. St. Louis Car Wheel Co., 123 Mo., 358, was an action to recover damages for personal injuries. It is held: “(1) In an action *213 for damages for personal injuries defendant, by answer, set up an alleged agreement in the nature of a release or discharge of the cause of action. To that plea, plaintiff replied that the agreement had been obtained by fraud, while he was unable (because of pain and suffering, caused by the injuries) to comprehend his act in signing it, and that he never assented to the agreement; held, that the reply to the plea of a release was sufficient in an action at law, without resorting to equity to cancel that document. (Gantt, Sherwood and Burgess, JJ., dissenting.) (2) Where a reply of fraud is made to a plea of release, and no point is interposed in the trial court of any deficiency in the reply on account of an omission to tender back the benefits received under the agreement for a release, and the record shows that those benefits were accounted for in the judgment, there is no prejudicial error in the omission to allege or prove an offer to' return those benefits, even if such offer were otherwise necessary to avoid the release.” It was contended that the action for damages was not maintainable, because the release had not been set aside by a decree in equity, and Blair v. Chicago & Alton R. R. Co., supra, was cited in support of that contention. But it was said in the opinion, “while that course may be adopted, it is not essential where the alleged fraud goes to the integrity of the release as a legal agreement.” The case is very fully considered, several of the judges writing separate opinions, and it is paiticularly instructive upon the question of the necessity of a tender. But it is unnecessary to consider that question here, as in the present case it is *214 admitted that the plaintiff tendered the amount that had been received.
Homuth et al. v. Metropolitan St. Ry. Co., 129 Mo., 629, was an action for personal injuries in which a release was pleaded as a bar. Held: “Whether or not a release interposed as a defense to an action for damages for personal injuries was obtained by fraud, may be tried as an issue at law and without first resorting to equity for the cancellation of such release. Where, however, the defendant has performed its part of the release agreement, and plaintiff admits its execution, and understood at the time its legal effect, such release is a bar to an' action at law until. set aside in equity.”
Och et al. v. M. K. & T. Ry. Co., 130 Mo., 27, was an action for personal injuries. The defendant set up a release as a bar. A majority of the court was of opinion that upon the plaintiff’s own showing the release was not void but only voidable and held that until set aside in an equitable ■ proceeding for fraud in its procurement, it was a bar to an action for injuries caused by the accident and that “an executed contract between competent parties, founded on a valuable consideration, not immoral or prohibited by statute, nor against public policy, is not void as between the parties thereto, however fraudulently obtained.”
Hancock v. Blackwell, 139 Mo., 440, was an action for slander. The defendant answered setting up a release as a bar to the action. The plaintiff replied admitting that she signed the release and averring that the same and her signature thereto had been procured by fraud, falsehood and undue influence brought to bear on her by the *215 defendant and that the same was wholly without consideration. The reply did not seek to avoid the bar of the release on the ground that the release was void, but merely on the ground that it was voidable, and it was held that: “Said release, until set aside, was a bar to this suit; and before it could be maintained, either an original action in equity must be brought to set aside such release, on the ground of fraud in obtaining it, or, as the offer to refund the money was made before the commencement of this suit, the same end could be reached by a separate count in the petition in the slander suit.” In the opinion it is said: “In such circumstances the issue of fraud should be tried by the court; and the evidence in order to justify setting aside the release should be clear and satisfactory, such as will preponderate over the presumption or evidence on the other side.”
• The case of Courtney v. Blackwell was again before the court in 150 Mo., 245. The case is quite instructive on several questions of practice. Upon the return of the case, the plaintiff amended her petition, as suggested in the opinion, and in the first count set up the release and averred that upon learning of the misrepresentations she had tendered to the defendant the ten dollars, with interest thereon, that he had paid her for the release, and prayed that it be cancelled and set aside, and in the second count set up her claim for damages. In answer to the first count, among other defenses, the defendant pleaded the statute of limitations. Plaintiff filed a general denial. Upon a trial had on the first count of the petition, the court entered a decree setting aside and cancelling the release. The cause then proceeded to trial on *216 the second count, resulting in a verdict for plaintiff, on which judgment was entered. It was contended that the court erred in forcing the defendant to trial upon the second count, pending the defendant’s motion for a new trial on the first count of the petition, and the excluding of the release as a defense to the action on the second count. The code of the state provides that when such causes of action are united, separate trials may be had for each cause of action at the same or different terms of the court, as circumstances may require, but that the judgment upon each separate finding shall await the trial of all the issues. This was not done in that case, but.the court held that the premature entering of the decree was not prejudicial. On the trial on the second count, the defendant objected to the introduction of any evidence in the case, or to any proceeding whatever in that case, until there had been a final disposition of the case on the first count, both in that court and in the appellate court. In the opinion it is said: “The statute does not contemplate a dismemberment of the action at any stage of the proceedings, whereby a part of it might be brought to this court and be pending here, while the other part of it was left behind in the circuit court. On the contrary, the .obvious meaning is, that the whole case shall be disposed of in the trial court before it is in condition for appeal.” It was also held that the amended petition, asking for a cancellation of the release, did not set up a new claim not before asserted, and that the action was not barred by the statute of limitations.
The Eagle Packet Co. v. Defries, 94 Ill., 598, *217 was an action on the case to recover damages for injuries sustained by the plaintiff while a passenger on one of the appellant’s steamboats. To the declaration the defendant pleaded the general issue and a special plea of release. “It appeared the plaintiff was an illiterate woman, unable to read or write, and the paper was obtained from her during her illness consequent upon an injury, by the physician who was attending her, in the absence of any of her friends to whom she could look for advice, the physician explaining to her that the servants of defendant had expended the sum of money named in the paper for her benefit, and wanted something to show what the money had been expended for, and this was all the explanation he made.” The court held that the jury properly found the plea of release was not sustained.
In Chicago, Rock Island & Pac. Ry. Co. v. Lewis, 109 Ill., 120, it is held: “An instrument absolutely void need not be rescinded in order to remove it out of the way to the assertion of a right. A contract void on account of fraud, or for any other reason, is in law as though it had never been executed. A release of all claim for damages growing out of a personal injury caused by negligence on the part of defendant, if fairly obtained by the agents of defendant (a railway company), and under standingly executed by the plaintiff, is an effectual bar to an action to recover for such injury. If a party, however, after receiving a serious personal injury as a passenger on a railway train, through negligence of the company, is induced to sign a release of all damages by the agents of the company, through their *218 representations or acts, which induce in his mind the belief he is only signing a receipt for money paid him at the time for loss of time and expenses incident to the delay resulting from the accident, and not as a discharge of the company for the injuries sustained, or if such release is procured by fraud and circumvention, it will be void as to the party so induced to execute the same. Fraud vitiates everything it touches, and a party will not be allowed to avail of an undue advantage obtained over another by fraudulent practices. Or if a person, while under the influence of. opiates to such an extent as to be incapacitated to contract, is induced to execute a release of damages for a personal injury, it will not be obligatory upon him, and will be no defense to an action brought by him. Where a person was severely injured as a passenger on cars of a railway company, and in a few hours after being taken to a hotel, after the injury, was induced by the agents of the company to sign a release of his right of action, under the belief he was signing only a receipt for money, which belief was caused by their fraudulent practices and representations, and it appeared that at the time he was suffering great physical pain and laboring under the effect of opiates, it was held, that under the circumstances he was not chargeáble with such negligence in executing the release without having first read the same, as to preclude him from asserting the truth as to the manner in which his signature was procured.” See also The National Syrup Co. v. Carlson, 155 Ill., 210.
In The Pawnee Coal Co. v. Royce, 184 Ill., 402, it is held that: “Actual, intended fraud in the procurement of a release of damages for personal *219 injuries must exist in order to excuse a return of the consideration by the plaintiff before bringing suit and to render the release of no effect in law.” And again: “In the cases where a release has been executed and its effect is sought to be avoided, the circumstances of its execution and whether there is sufficient cause to avoid it, as well as whether a return of the consideration therefor is necessary, are questions of fact for the jury under proper instruction's.”
In The Pioneer Cooperage Co. v. Romanowicz, 186 Ill., i, it is held: “A release of damages may be regarded. as not fairly obtained, and hence as inoperative where the party executing the release is unable to read it and it is not read to him, but is represented to him by the- party claiming the benefit, as being for another purpose.” To the same effect is Indiana, Decatur & Western Ry. Co. v. Fowler, 201 Ill., 152.
Schultz v. Chicago & N. W. Ry. Co., 44 Wis., 638, was an action for personal injuries. The answer set up a release. The plaintiff, after the answer was served, tendered the money to defendant’s attorneys. The plaintiff testified that he did not know the contents of the instrument when he signed it, and would not have signed had he known the nature of it. He denied that he ever settled with the defendant and testified that he supposed the money he received was to pay him for the time he was laid up with his wounds. Held: that he was not bound by the release if he signed it without knowing its contents or intending to sign such an instrument.
In Bussian v. Milwaukee, Lake Shore & W. Ry. Co., 56 Wis., 325, it is held: “A release of *220 all claims, which is pleaded as a bar to an action at law, may in that action, be shown to have been obtained by fraud, misrepresentation, or undue influence, if all the parties to the release are parties to the action, and the finding of the jury upon the question of fraud has the same force as their verdict upon any other issue in the action.” Lusted v. Chicago & N. W. Ry. Co., 71 Wis., 391, is to the same effect.
In Gibson v. Western N. Y. & Pa. R. R., 164 Pa. St., 142, the case is stated as follows: “In an action against a railroad company to recover damages for personal injuries, defendant set up as a defense a release executed by plaintiff. Plaintiff swore that the release was executed when he was under the influence of anaesthetics, and positively denied the exercise of any mental faculty on his part in the execution of the paper. • Five disinterested witnesses, four of whom were physicians, testified that plaintiff was perfectly rational at the time he executed the release. Held: that the case was for the jury. Plaintiff’s claim was of right according to law and not of grace according to equity. The dispute was as to the fact of the deed, not as to the equities under it.” Julius v. Pittsburg, Allegheny & Manchester Trac. Co., 184 Pa. St., 19, is to the same effect.
In Dixon v. Brooklyn City & N. R. R. Co., 100 N. Y., 170, a release was set up as a bar to an action for personal injuries, and there was testimony tending to prove that at the time of its execution the plaintiff was in a condition of mind that rendered him incompetent to appreciate the character of the instrument that he executed. It is held that the question is for the jury.
*221 In O’Meara v. Brooklyn City R. R. Co., 16 App. Div. (N. Y.), 204, it is held: “Where a release is put in evidence as a defense to the plaintiff’s claim in an action to recover damages for personal injuries, the plaintiff may prove that she signed it, not knowing its contents, and that she was induced to do so by false representations, or any other facts tending to impeach it.”
In Missouri Pacific Ry. Co. v. Goodholm, 61 Kans., 758, it is held: “Where personal injuries have been suffered from which a liability exists, and a release therefor has been fraudulently procured, an action for damages may be maintained without first obtaining a decree to rescind or to cancel the release, and the plaintiff is not precluded from attacking a release so obtained, when it is set up as a defense, because he has not restored or tendered back the amount received by him at the time the release was obtained.”
In Mullen v. Old Colony R. R., 127 Mass., 86, it is held: “If a defendant obtains the signature of plaintiff to a paper, purporting to be a settlement and discharge of the cause of action, by fraudulent representations that it is merely a receipt for a gratuity, the plaintiff may maintain his action without returning the money paid him.” To the same effect is O’Donnell v. Inhabitants of Clinton, 145 Mass., 461.
In Viallet v. Consolidated Ry. & Power Co., 84 Pac. Rep., 496, it is held: “In an action by a passenger for injuries caused by collision of street cars, evidence tending to show that a release signed by plaintiff at the solicitation of defendant’s physician while he was treating plaintiff professionally was obtained by misrepresentation, held to *222 require submission to the jury of the question of the validity of the release.”
The Chicago & N. W. Ry. Co. v. Wilcox,, 116 Fed. Rep., 913, was a suit in equity to rescind a release of a claim for personal injury on the ground of fraud, undue, influence, and mistake, and is instructive where the case is one for the determination of the. court.
In Alabama & Vicksburg Ry. Co. v. Jones, 73 Miss., no, it is held: “In an action for damages, by an old and ignorant man, for injuries received by a 'kicked' car, necessitating the amputation of a foot, where the railroad company, within two days after the injury, and within twelve hours after the amputation, and while he was suffering from pain and the effects of opium, and therefore incapable of acting rationally, induced him to release his claim for a small cash payment, it is proper, where the company relies upon such release, to instruct the jury that the plaintiff had a right to know the facts of the injury and their effect upon his right to repudiate the release, voidable for fraud, and that the release was not binding, unless he, subsequently, when competent to act, with full knowledge of the facts, and his rights under them, and of his right to disaffirm, ratified the same.”
In Cassilly v. Cassilly, 57 Ohio St., 582, it is held: “Where mother and son enter- into a written contract, which is correctly read to her before its execution, and she then voluntarily executes it, she is bound by its terms until it is set aside by a proceeding brought for that purpose. The facts, if satisfactorily established', that she could not read' writing, and on account of the *223 confidence reposed by her in her son, did not carefully weigh, so as to comprehend the terms of the instrument, when it was read to her, afford no ground to treat it as a nullity or to permit her to contradict its terms by parol evidence when interposed by the son as a defense to an action at law brought by her against him.”
In the present case, it will appear by examination of the reply that the plaintiff avers that she is illiterate, unable to read or write except to sign her name, and that in signing said paper writing she did so under a mistake as to its contents and upon the representations of the defendant, its agents and employes, that it was a mere receipt for servant hire as aforesaid, and under the impression that she was simply signing a mere receipt, and while she was physically and mentally incapacitated from acting in the matter. There are many other averments in the reply placed there for the purpose of avoiding the release. The above averments, and some others, are of facts, which, if proven, would show that the release was not voidable but void. There are other averments which, if proven, would merely show that the release was voidable. These latter averments did not make a proper issue in an action at law, but the averments of facts tending to show that the release was void were proper, and the common pleas court properly refused the request to charge the jury that the release was a bar to the action.
The remaining question is respecting the instruction as to the burden of proof. The court instructed the jury that the burden was upon the plaintiff to prove the fraud averred but also instructed the jury, in effect, that the release' was
*224 not a defense to the action unless the defendant proved the settlement and that there was no fraud on the part of the defendant below in obtaining the release, and to show that the plaintiff had full knowledge of what was contained in the release. This question was made in almost precisely the same way in The Addyston Pipe & Steel Co. v. Copple, 94 Ky., 292. It is there held: “Where the defendant in an action to recover damages for personal injuries relied for defense upon a writing signed by the plaintiff acknowledging the receipt of a certain sum from the defendant 'in full settlement’ of all claims against defendant on account of the injuries received, it was error to instruct the jury that the burden was on the defendant to show that the plaintiff fully understood and assented to the agreement as a settlement of his claim for damages. The presumption is conclusive that the plaintiff so understood the writing, and he is bound by it with that meaning unless he attacks it by a plea of mistake, and then sustains that plea by the weight of evidence.”
In Lusted v. Chicago & N. W. Ry. Co., 71 Wis., 391, 398, it is said: “The trial court, in effect, held that the burden of impeaching the release was upon the plaintiff, who must show with reasonable certainty that it was not intended to include the claim for personal injury; and the jury were told that if the plaintiff signed it after the subject of his injuries was talked over, understanding that it was a release of that claim,' whether he then knew the extent of his injuries or not, if he executed the instrument understandingly, he was bound by it.” This charge was approved.
The charge in the present ease is not unlike this. *225 It is true, if he executed the instrument undérstandingly, he was bound by it, but notwithstanding the instruction that the burden of impeaching the release was upon the plaintiff and that he must show with reasonable certainty that it was not intended to include the claim of personal injuries, the statement that “if he executed the instrument understandingly, he was bound by it,” probably would mislead the jury. He was bound by it even though he did not understand it, unless by the weight of the evidence he impeached it for fraud in its execution.
The release as a defense does not negative the plaintiff’s cause of action, but is a bar to a' judgment upon it, and the burden of proof to establish it is upon the defendant; but there is a distinction between the burden of proof and the burden of evidence, or the burden to go forward with the evidence. When the defendant proved, or the plaintiff admitted, the receipt of the fifteen dollars, her signature to the release and its delivery to the defendant, the defendant had prima facie established this defense and the burden was upon the plaintiff, by the weight of the evidence, to prove fraud in the execution of the release.
The instruction was, in effect, that the burden of proof was on the defendant to show not only that the plaintiff executed and delivered the release for the consideration named, but also that she knew the contents of the release.
In Och et al. v. M. K. & T. Ry. Co., 130 Mo., 27, 44, it is said in the opinion: “She signed her own name to the paper, and the burden rested upon her to show that its execution was obtained from her by fraud and deceit.”
*226 When the signature is admitted the presumption is that the party signing the instrument understood its terms, and he is bound by it unless he can prove facts that will avoid it.
In Wright v. Northampton & Hertford R. R. Co., 125 N. C., 1, where the execution of a release was not disputed, the court holds that in the absence of evidence to prove fraud, it is error to submit to the jury the question whether the release is the contract of the plaintiff. In The East St.Louis Packing & Provision Co. v. Hightower, 9 Ill. App., 297, it is held: “Appellee claiming that the release of all claim for damages was obtained from him by fraud, the burden was upon him to prove the fraud by a fair balance of testimony.” In DeDouglas v. Union Traction Co., 198 Pa. St., 430, it is held: “It is error to submit the question of fraud to a jury to overturn a written instrument upon slight parol evidence. The evidence of fraud in such cases must be clear, precise and indubitable, otherwise the case should be withdrawn from the jury.” To the same effect is The Denver & Rio Grande R. R. Co. v. Sullivan, 21 Col., 302, and it is also there held that the release is not subject to be contradicted or varied by parol testimony. To the same effect is Bonsack Machine Co. v. Woodrum, 88 Va., 512. And in Atchison, Topeka & Santa Fe Ry. Co. v. Vanordstrand, 67 Kans., 386, it is held: “A person who, without reading it, signs a written contract releasing his right to maintain an action for damages resulting from an injury occasioned by the negligence of his former employer will be held to have executed the instrument with full knowledge of its contents, when his only excuse for not reading it was that *227 he was ‘somewhat hurried.’ Such a contract can not be avoided by the party signing it because he relied upon ‘allusions to future employment’ made by the agent of his former employer in the negotiations consummated by the written release, which employment was not furnished him.”
The judgment is

Affirmed.

Price, C. J., Shauck, Crew, Spear and Davis, JJ., concur.